HENRY L. PIERSON et al., Respondents, *v.* ROBERT CROOKS et al., Appellants.

Under an executory contract for the sale and delivery of goods of a specified quality, in the absence of an express warranty, the quality is a part of the description of the goods and the vendor is bound to furnish articles corresponding therewith.

If articles of an inferior quality are tendered, the purchaser is not bound to accept, but if he does, he is, in the absence of fraud, and so far as defects, open and ascertainable at the time, are concerned, deemed to have assented that they correspond with the description and is concluded from subsequently questioning this.

This imposes upon the vendee the duty of inspection before acceptance if he desires to save his right in case the goods are of inferior quality.

In such case *it seems* there is no warranty of quality which survives acceptance, so far as visible or ascertainable defects are concerned, and the vendee cannot reject the goods after acceptance or recover damages for inferior quality.

Where goods are ordered of a specific quality, which the vendor undertakes to deliver to a carrier, to be forwarded to the vendee at a distant place, to be paid for on arrival, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination.

The carrier is not the agent of the vendee, to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them.

It is the duty of a purchaser to act promptly, in examining goods sent upon his order, to see whether they comply therewith and to give prompt notice to the vendor of their rejection, if found defective, if he intends to avail himself of that remedy.

The vendee has, however, a reasonable time for examination, and what is a reasonable time is generally a question of fact, to be determined by a jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee.

The purchaser of goods under an executory contract, where payment and acceptance are by the contract concurrent and dependent obligations, cannot, in the absence of fraud or deceit on the part of the vendor, on delivery of the goods pay the purchase-money and subsequently rescind the contract and reject the goods for defects ascertainable on examination.

The contract, however, may provide that payment shall be made in advance of delivery and acceptance, and, when it does, payment will not preclude the purchaser when delivery is tendered, from the right of examination and of rejection if the goods do not conform to the contract.

Plaintiffs, importers and dealers in iron in the city of New York, entered into a contract in writing with defendants, who were engaged at Liverpool in the business of buying and selling iron manufactured by others, for the delivery of two descriptions of iron to be shipped at Liverpool, *i. e.*, sheets and hoops to be thereafter manufactured according to specifications to be furnished by plaintiffs, the quantities, qualities and prices of each being specified. These specifications directed that the sheets should be forwarded in three separate shipments and the hoops in three or four. Defendants were to deliver the iron "free on board" at Liverpool, and plaintiffs were to pay for it by bills of exchange at sixty days on delivery to them of the shipping documents in New York. The plaintiffs, on arrival of the first shipment of hoops, but before inspection, made payment on delivery of the shipping bills, and paid the custom duties on landing of the goods. *Held*, that such payments did not conclude plaintiffs from denying an acceptance; that the payment of the duties was requisite before plaintiffs could take possession or exercise any control over the property, and before any opportunity of examination; that the event upon which plaintiffs were bound under the contract to pay, *i, e.*, delivery of the shipping documents might, and in ordinary course of events would, precede delivery of the goods; and that, therefore, a payment on presentation of said documents was not inconsistent with, and did not preclude, plaintiffs from subsequently rejecting the goods if found defective on examination.

Also, *held*, that the contract was not entire and indivisible in its nature; and that acceptance of the sheets did not preclude plaintiffs from rejecting the hoops.

After plaintiffs had rejected the hoops included in the first shipment they asked to defer payment for those which came in the two succeeding shipments until examination, but, upon defendants refusing to accede to this and demanding payment, made the payment with a reservation of the right to reject. *Held*, that the payment did not deprive them of the right of examination and rejection.

Defendants set up as a counter-claim the refusal of plaintiffs to accept a subsequent shipment of hoops. They did not prove, and stated they would not insist, that the last shipment was of the quality provided in the contract. *Held*, that the counter-claim was properly overruled.

*Fisher* v. *Samuda* (1 Camp. 190); *Hopkins* v. *Appleby* (1 Stark. 388 ); *Reed* v. *Randall* (29 N. Y. 361) distinguished.

Reported below, 42 Hun, 571.

(Argued June 3, 1889; decided October 8, 1889.)

These are cross-appeals from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which affirmed a judgment, entered upon the report of a referee, so far as it

provided for the recovery by plaintiffs, and reversed it so far as anything was allowed on defendants' counter-claim.

The nature of the action and the facts are sufficiently stated in the opinion.

*John L. Hill* for appellants. The agreement was executory. (Benjamin on Sales, §§ 3, 78, 310, 311 a, 352, 357.) The phrase "immediate specification" was practically construed by the parties to include the right to indicate the manner of shipment, *i. e.*, by steamer, and in separate lots each shipment under one bill of lading and one invoice for each shipment. (*Deming* v. *Kemp*, 4 Sandf. 147; *Tipton* v. *Feitner*, 20 N. Y. 423; *Swift* v. *Opdyke*, 43 Barb. 274; *Winne* v. *McDonald*, 39 N. Y. 233.) The contract is in writing and contains no express warranty. We cannot resort to the negotiations or relations of the parties to explain it. (Benjamin on Sales, § 650; *Dent* v. *N. A. S. S. Co.*, 49 N. Y. 390; *Terry* v. *Wheeler*, 25 id. 523; *Bradley* v. *Wheeler*, 44 id. 500.) Nor was there an implied warranty. (*Osborne* v. *Gantz*, 60 N. Y. 543; Benjamin on Sales, § 610; *Gurney* v. *A. & G. R. R. Co.*, 58 N. Y., 368; *Dutchess Co.* v. *Harding*, 49 id. 321; *Reed* v. *Randall*, 29 id. 362.) Where the vendor was the manufacturer of the goods sold, there is implied warranty on the delivery that the article shall be fit for the known and specified use. (*Kent* v. *Friedman*, 17 Week. Dig. 484; *Brigg* v. *Hilton*, 99 N. Y. 517; *Hargous* v. *Stone*, 1 Seld. 86; *Hoe* v. *Sanborn*, 21 N. Y. 567, 568; *Reed* v. *Randall*, 39 id. 361; *Hawkins* v. *Pemberton*, 51 id. 198; *Gaylord* v. *Allen*, 53 id. 518; *Dounce* v. *Dow*, 64 id. 411, 415, 416.) The plaintiffs waived their right of examination and rejection, and accepted the Liverpool shipments when they removed the goods from that port through the steamers "Germanic," "Arizona," "Chester" and "Abyssinia." (*Sprague* v. *Blake*, 20 Wend. 64; *Hargous* v. *Stone*, 1 Seld. 88; *Pease* v. *Copp*, 67 Barb. 142; *Stafford* v. *Pooler*, Id. 143; *Neaffie* v. *Hart*, 4 Lans. 8, 9; *Reed* v. *Randall*, 29 N. Y. 363; *Krulder* v. *Ellison*, 47 id. 36; *Wilcox Silver P. Co.* v. *Green*, 72 id. 17; *Brown* v. *Hare*, 3 Hurl.

& N. 484; 27 L. T. Ex. 272; 4 id. 382; 19 id. 66; Benj. on Sales, §§ 681, 358, 380, 693; *P. I. Works* v. *L. I. R. R. Co.*, 62 N. Y. 272; *Smith* v. *Edwards*, 29 Hun, 493; *Terry* v. *Wheeler*, 27 N. Y. 525; *Outwater* v. *Dodge*, 6 Wend. 401.) Defendants did not agree and were not bound to give plaintiff an opportunity for personal inspection. (*Hart* v. *Wright*, 17 Wend. 274, 275; *Hargous* v. *Stone*, 1 Seld. 88; *Vanderhorst* v. *McTaggart*, 2 Bay R. 498; *Neaffie* v. *Hart*, 4 Lans. 8, 9; *Pease* v. *Copp*, 67 Barb. 132.) This money having been paid under a claim of right, without fraud or duress of person or goods, could not be recovered back. (*Brisbane* v. *Dacers*, 5 Taunt. 155; *Bilbie* v. *Lumley*, 2 East, 470; *Mowatt* v. *Wright*, 1 Wend. 355, 363; *Clark* v. *Dutcher*, 9 Cow. 681; *Jacobs* v. *Morange*, 47 N. Y. 58; *Flower* v. *Lance*, 59 id. 610; *McArthur* v. *Luce*, 38 Am. Rep. 204; *Suprs. of Onondaga* v. *Briggs*, 2 Den. 40.) The expenses of transportation are not recoverable. (*Stafford* v. *Pooler*, 67 Barb. 143.) The case lacks every element of a refusal to accept, and abundantly illustrates precisely that fast and loose conduct which courts always condemn in such matters. (*Hargous* v. *Stone*, 1 Seld. 86, 87; *Reed* v. *Randall*, 29 N. Y. 363; *Dutchess Co., etc.,* v. *Harding*, 49 N. Y. 321.) A vendee is "not at liberty to retain a part, etc. They must receive the whole as it is or return the portion delivered. * * * They can have no damages if they refuse to return the part delivered." (*Reed* v. *Randall*, 29 N. Y. 366; Benj. on Sales, § 652, p. 645; 29 N. Y. 363; *Hargous* v. *Stone*, 1 Seld. 86, 87.) There is no evidence of unreasonable delay in shipments. (Benj. on Sales, § 683.) All points except the matter of gauge were waived, and that point was wholly disproved. (*Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 489, 490; *Hayden* v. *Collman*, 73 id. 567, 570.) On deviation there is the element of ratification within the rules peculiar to agency. (*Kruder* v. *Ellison*, 47 N. Y. 39; *Magruder* v. *Gage*, 33 Md. 344; 3 Am. Rep. 177.)

*James C. Carter* for respondents. Before any executory contract for the sale of goods can be deemed executed, an

acceptance of them by the purchaser must be shown, and such acceptance imports a mental operation by the purchaser based upon an actual inspection of the goods. (*Pope* v. *Allis*, 115 U. S. 363; *Messmore* v. *N. Y. S. & L. Co.*, 40 N. Y. 422; *C. & B. S. N. Co.* v. *De Mattos*, 32 L. J., Q. B. 322; 33 L. J., Q. B. 214; *C. I. Co.* v. *Pope*, 108 N. Y. 232.) The fact that payment was required upon the receipt of the shipping receipts is not an unusual circumstance, and is utterly insufficient to justify the conclusion of a waiver of the right of examination, or that it was understood that Liverpool was the place of such examination. (*C. I. Co.* v. *Pope*, 108 N. Y. 232 ) The only proposition of law which can be stated is that such examinations should be made with reasonable promptitude, and what is reasonable depends upon the nature of the case and the attendant circumstances. (*Norton* v. *Dreyfus*, 106 N. Y. 90.) The only question which can be made in this court is a question of law, and if there ever was such a question upon this point of acceptance, and one could have been made (and none could have been), none has been made. (*Porter* v. *Smith*, 107 N. Y. 531.) Even without the express reservations made, the payment would not have precluded subsequent examination and rejection; and in those cases where such examination and rejection may be had after payment, the fact of payment has but little force. (*C. I. Co.* v. *Pope*, 108 N. Y. 232.) The contract was entire and indivisible. (*Pope* v. *Porter*, 102 N. Y. 366; *Cohen* v. *Platt*, 69 id. 340.)

*George A. Black* for respondents. The contract upon which the rights of these parties are to be determined is not entire or divisible. (*Secor* v. *Sturgis*, 16 N. Y. 558; *Tipton* v. *Feitner*, 20 id. 423; *Baker* v. *Higgins*, 21 id. 397; *Husted* v. *Craig*, 36 id. 223; *Winne* v. *McDonald*, 39 id. 233; *Merrill* v. *A. Ins. Co.*, 73 id. 453, 458; *Deming* v. *Kemp*, 4 Sandf. 147; *Swift* v. *Opdyke*, 43 Barb. 274; *Manning* v. *Humphries*, 2 E. D. Smith, 218; *Y. M. Co.* v. *Wakefield*, 121 Mass. 91.) This being the case of an executory contract

for the sale of articles not in existence, but to be furnished by the vendor, and there being in the contract a particular description of the articles sold, it is not, under the authorities, very material whether it be called a condition of warranty. (*Chanter* v. *Hopkins*, 4 M. & W. 399 ; *Harkins* v. *Pemberton*, 51 N. Y. 198, 207 ; *White* v. *Miller*, 71 id. 129 ; *Howard* v. *Hoey*, 23 Wend. 352 ; *Dounce* v. *Dow*, 64 N. Y. 415.) An obvious distinction exists between the acceptance which will satisfy the statute of frauds and the acceptance which bars the right to object that a contract has not been performed. (*Morton* v. *Tibbitts*, 19 L. J., Q. B. 382 ; *Garfield* v. *Paris*, 96 U. S. 557 ; *Allard* v. *Greasert*, 61 N. Y. 1 ; *Pope* v. *Allis*, 115 U. S. 363 ; 6 Sup. Ct. Rep. 69 ; *Conrad* v. *Dater*, 2 Biss. 342 ; *Doane* v. *Dunham*, 79 Ill. 131 ; *Knoblauch* v. *Kronschnable*, 18 Minn. 300.) The quantity forwarded was largely in excess of the specifications, and it was not the business of the plaintiffs to pick out enough to make up the quantity or to select the bundles which conformed to the specifications from the mass. (*Downer* v. *Thompson*, 6 Hill, 208, 211.)

Andrews, J. The contract was between the plaintiffs, importers and dealers in iron, in the city of New York, and the defendants, engaged at Liverpool, England, in the business of buying and selling iron manufactured by other persons, and having an agency in the city of New York. The contract was in writing, entered into in the city of New York, for the future delivery by the defendants to the plaintiffs of two descriptions of iron, hoops and sheets, the quantity, quality and price of each description being specified. The iron was not then in existence, or, if in existence, was not identified, and it was contemplated that it was to be thereafter manufactured according to specifications to be furnished by the plaintiffs. The words " immediate specification " related primarily to the sizes and gauges of the iron. The plaintiffs, however, in their specifications, directed that the iron of each description should be sent forward in three or four separate shipments, and that

shipping documents should be sent with each shipment, and the defendants acceded to this direction. By the contract the defendants were to deliver the iron " free on board " at Liverpool, and the plaintiffs were to pay for it by bills of exchange, at sixty days, on delivery to them of the shipping documents in New York. The words are "payment by 60 d / St. Bl. Exchange against shipping documents here." The quality of the hoops is stated in the contract as " W I W or equal," and of the sheets, one hundred tons, " W I W or equal," and fifty tons " R G." The letters used designate brands of iron well known to the market. The iron shipped was none of it " W I W " iron. It is conceded on both sides that the contract was executory, and that the rights of the parties are governed by the rules which apply to a contract to sell and deliver in the future a commodity to be procured by the vendors, as distinguished from a sale *in presenti* of specific, identified and existing merchandise.

The main controversy relates to the claim of the plaintiffs to recover back duties and expenses, etc., paid by them in New York on the hoops shipped by the defendants at Liverpool, amounting to $2,501.69, and the further sum of $3,229.78 paid on the contract for the purchase of the hoops. The claim is put on the ground that the quality of the hoops did not correspond with the contract, and were greatly inferior and unmerchantable, and were rejected for that reason by the plaintiffs. The fact that the hoops were of inferior quality is not now controverted. The referee so found, and, also, that they were so defective as to be unmerchantable. The defendants did not seek to review this finding at the General Term, and, instead of incorporating into the case the evidence on the subject, they inserted a statement that they do not question, on the appeal, the finding of the referee, or that the actual quality of the hoops was not equal to " W I W " iron.

The defendants, while admitting the inferior quality of the iron, resist the recovery had by the plaintiffs, on the grounds, *first*, that they delivered the iron " on board " steamers at

Liverpool, according to their contract, and that the plaintiffs' were bound then and there to inspect the iron and ascertain its quality, and reject it if it was not according to contract, but not having done so, this was, in law, an acceptance at Liverpool, which precluded them from subsequently questioning the quality or rejecting the iron; *second*, that if the right of inspection and rejection might have been exercised after the iron reached New York, the plaintiffs did not act with sufficient promptness, and lost the right by delay, and, also, that by paying for the iron after it reached New York, they concluded themselves from subsequently asserting that there had been no acceptance, the act of payment being, as is insisted, wholly inconsistent with such claim; *third*, that the contract was entire and indivisible, and that the plaintiffs, having accepted and paid for the sheets, could not reject the hoops.

There is no dispute as to the rule of law touching the rights of parties under an executory contract for the future sale and delivery of goods of a specified quality, in the absence of express warranty. The quality is a part of the description of the thing agreed to be sold, and the vendor is bound to furnish articles corresponding with the description. If he tenders articles of an inferior quality, the purchaser is not bound to accept them. But if he does accept them, he is, in the absence of fraud, deemed to have assented that they correspond with the description, and is concluded from subsequently questioning it. This imposes upon the vendee the duty of inspection before acceptance, if he desires to save his rights in case the goods are of inferior quality. There is in such case no warranty of quality which survives acceptance, and the vendee cannot reject the goods after acceptance or recover damages for inferior quality. He can do nothing inconsistent with the right of rejection, or do what is only consistent with acceptance and ownership, without precluding himself. The mere use of an article on trial may in some cases be contemplated by the parties as a means by which the vendee is to ascertain whether it corresponds

in quality with the article agreed to be furnished. In such cases mere use is not inconsistent with a subsisting right to reject for cause, and will not constitute an acceptance. The general rule is stated in Benjamin on Sales. In section 701 the author says : " The buyer is entitled before acceptance to a full opportunity of inspecting the goods, to see if they correspond with the contract; " and in section 706 : "Where goods are sent to the buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them. For receipt is one thing and acceptance another; but receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything be done by the buyer which he would have no right to do unless he were the owner of the goods." The rule governing executory contracts of sale has been frequently considered in this state and applied under various circumstances. (*Sprague* v. *Blake*, 20 Wend. 64; *Reed* v. *Randall*, 29 N. Y. 361; *Gurney* v. *A. & G. W. R. R. Co.*, 58 id. 358.)

The contention that the iron was delivered and accepted at Liverpool proceeds on the assumption that objection to quality should have been made at the point of shipment, and could not be taken after the iron arrived at New York. It is manifest that the right of inspection to ascertain whether the iron furnished corresponded in quality with the contract was of prime importance to the vendees. The quality of the iron was a most material consideration, and neither party could have contemplated that the vendees were bound to accept iron defective in quality. When and at what place the right of inspection was to be exercised was not definitely fixed by the contract. The intention of the parties, when ascertained, is to govern. They might have provided that the inspection should be made either at Liverpool or at New York. The contract is silent on this point, and the defendants insist that, in the absence of express words, the law ascertains and fixes the intention that examination should be made at the place where the defendants were to deliver the iron, to wit, at Liverpool

We are, however, of opinion that where goods are ordered of a specific quality, which the vendor undertakes to deliver to a carrier to be forwarded to the vendee at a distant place, to be paid for on arrival, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination, and that the carrier is not the agent of the vendee to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them. The defendants undertook to deliver iron of a specific quality on board steamers at Liverpool, to be sent to the purchasers at New York. This contract was not performed by delivering iron of inferior quality. They knew, or were bound to know, that the iron delivered was defective. They selected and purchased the iron, and it was within their power, and it was their duty to supply iron of the proper grade. If they sent forward iron of inferior grade, they justly should bear the consequences and sustain any loss entailed by the non-performance of their contract, unless they guarded themselves by imposing upon the plaintiffs the duty of acceptance or rejection at the port of shipment. It is said that on the delivery of the iron on shipboard at Liverpool the title vested in the plaintiffs, and that the vesting of the title in the vendees implies an acceptance and is inconsistent with the alleged right of inspection and rejection on its arrival in New York. There can be no doubt that on delivery to the carrier of iron corresponding with the contract the title would immediately vest in the purchasers, and the iron would thereafter be at their risk. Nor is there any doubt of the general rule that delivery of goods corresponding with the contract is a condition precedent to the vesting of the title in the vendee. (*Reed* v. *Randall*, *supra*.) But assuming that the title to the iron for some purposes vested in the plaintiffs on delivery to the steamers, it was, as between the vendors and vendees, a conditional title, subject to the right of inspection and rejection for inferior quality on arrival at New York. The circumstances strongly confirm the view that the parties did not contemplate that the

right of inspection should be exercised at Liverpool. The contract was made in New York and the plaintiffs had no agent in Liverpool. The defendants shipped the iron on steamers selected by themselves. They gave the plaintiffs no notice in advance of the times of shipment, or by what steamers the shipments would be made, or at least no nòtice in time to enable the plaintiffs to exercise the right of inspection at Liverpool. The plaintiffs, after arrival of the first shipment by the "Germanic," rejected the hoops on board for defect in quality, and the defendants' agent in New York, while not assenting to the fact that they were inferior, said they would consider and examine into it, but made no claim that the objection came too late. The ordering of goods of a specific quality by a distant purchaser of a manufacturer or dealer, with directions to ship them by a carrier, is one of the most frequent commercial transactions. It would be a most embarrassing and inconvenient rule, more injurious even to the dealer or manufacturer than to purchasers, if delivery to the carrier was held to conclude the party giving the order from rejecting the goods on arrival, if found not to be of the quality ordered. A similar question was considered in the case of *Pope* v. *Allis* (115 U. S. 363), and it was there held that the mere delivery of goods under an executory contract, by the vendor to the carrier appointed by the vendee, did not necessarily bind the latter to accept them, and that on arrival the purchaser has the right of inspection and rejection if they did not conform to the contract. It is the settled rule that a carrier, unless specially authorized, is not the agent of a vendee to accept goods so as to validate a verbal contract under the statute of frauds. (Blackburn on Sales, 22; *Allard* v. *Greasert*, 61 N. Y. 1, and cases cited.) I do not perceive that the agency should be considered more extensive in the case of goods delivered under an executory contract, where no question of the statute arises. An examination by carriers of the quality of the goods would be, in most cases, impracticable. The first ground upon which the defendants sought to defeat the action cannot, we think, be supported,

and we are of opinion that the plaintiffs had the right of inspection and rejection for defect in quality, after the iron arrived in New York.

The objection that the plaintiffs waived the right to reject the iron for defective quality by their delay in inspecting and rejecting it after it reached New York, was urged on the trial, and the referee found, although with "some degree of hesita-tion," that under all the circumstances there was no unreasonable delay in the examination by the plaintiffs after its arrival. The steamer "Germanic" with hoops and sheets arrived April 5, 1880; the "Arizona," April twelfth; the "Chester," with hoops only, April twentieth. It required from three to five days to discharge cargo, and ten days was the usual time allowed for removing goods from the dock. The hoops which came by the "Germanic" were removed by the plaintiffs from the dock to their warehouse, on or before the fifteenth day of April, when they examined them for the first time and promptly notified the agents of the defendants of their objections, and requested their removal. They were not taken away by the defendants, and on April twenty-second the plaintiffs stored them in a general warehouse subject to the order of the defendants and delivered to them the storage receipts. The hoops by the "Arizona" and by the "Chester," remained on the dock without examination by the plaintiffs from the time of arrival and unloading of these vessels, until the twenty-sixth and twenty-seventh of April, when the plaintiffs examined them, and finding them defective, on the twenty-ninth of April they notified the defendants of their objections, and on or before the first of May stored them in a warehouse for account of the defendants, and, on the eighth of May, gave the defendants formal notice that they rejected the hoops and that they were stored, and on the eleventh of May tendered the storage receipts. The referee found that examination of the hoops by the "Arizona" was possible at any time after the sixteenth of April, and of the "Chester" hoops any time after April twentieth, and that the postponement of examination was attributable to reasons of business necessity or convenience

of the plaintiffs. It was shown that it was not the custom in New York for purchasers to examine goods, coming by sea, upon the dock, but to postpone examination until they were removed to their stores. It is the duty of a purchaser to act promptly in making an examination of goods sent upon his order, to see whether they comply therewith, and to give prompt notice to the vendor of their rejection, if found defective, if he intends to avail himself of that remedy. It was said by Lord ELLENBOROUGH, in *Fisher* v. *Samuda* (1 Camp. 190) that "it was the duty of a purchaser of any commodity, immediately on discovering that it was not according to order and unfit for the purpose intended, to return it to his vendor or give him notice to take it back." Similar language was used by the same judge in *Hopkins* v. *Appleby* (1 Stark. 388) and in *Sprague* v. *Blake* and *Reed* v. *Randall* (*supra*), the doctrine stated by Lord ELLENBOROUGH was quoted with approval. Indeed, it stands upon the most obvious justice and equity, that the seller should be apprised promptly if there is any objection and the vendee intends to reject the goods, so that he may retake possession or resell the goods and save himself as far as practicable, from loss. But the vendee has a reasonable time for examination and to give notice, and what is a reasonable time is usually a question of fact and not of law, to be determined by the jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee. In *Fisher* v. *Samuda* there was an interval of six months between the discovery of the defect and notice to the vendor. In *Hopkins* v. *Appleby* the vendee used the article purchased after discovering the defect, until it was wholly consumed, and then for the first time notified the vendor of the defective quality. In *Reed* v. *Randall* the tobacco was delivered to the vendee in April, and the first notice to the vendor of any defect was in September of the next year. The delay in the examination of the hoops which came by the "Germanic" for five or six days after they were unloaded, and of ten days in the case of the "Arizona," and

a less number in the case of the "Chester," and the subsequent delay, until the eighth of May, to give notice of the rejection of the hoops, which came by the two last-named vessels, was not so great that the court can say, as matter of law, that it was unreasonable, and we are concluded by the finding of the referee from re-examining the question of fact. The authorities are uniform upon the point that the question of reasonable time in such cases is generally one of fact and not of law. (*Doane* v. *Dunham*, 79 Ill. 131; *Boothby* v. *Scales*, 27 Wis. 626; *Hickman* v. *Shimp*, 109 Penn. St. 16; *Stone* v. *Browning*, 68 N. Y. 604; Benj. on Sales, 904.)

The plaintiffs, after the arrival of the hoops, made two payments to defendants, April nineteenth, and April twenty-fourth. The payment of April twenty-fourth included the purchase-price of the hoops which came by the "Arizona" and "Chester." The duties were paid on the landing of the goods. The sums paid for duties, and for the hoops are those which the plaintiff sought to recover back in this action. The defendants insist that those payments, made after the arrival of the goods, conclude the plaintiffs from denying an acceptance. The payments, it is claimed, were a conclusive recognition by the plaintiffs of their ownership of the goods, and their obligation to pay for them, and, further, that the payment of April twenty-fourth, having been made on the demand of the defendants, under a claim of right, it was voluntary and cannot be recovered back. The purchaser of goods under an executory contract, where payment and acceptance are, by the contract, concurrent and dependent obligations, cannot, on delivery of the goods, pay the purchase-money, and subsequently rescind the contract and reject the goods for defects ascertainable on examination. It would be inconsistent with the nature of the transaction and the admission which the payment implies to permit him to do so in the absence of fraud or deceit on the part of the vendor. (*Brown* v. *Foster*, 108 N. Y. 387.) In such case the purchaser must satisfy himself, before making payment, that the goods tendered correspond with the contract. But the contract

may provide that payments shall be made in advance before delivery or acceptance of the goods. There is nothing in such a stipulation inconsistent with an executory contract, nor would payment under such a contract preclude the purchaser, when delivery is tendered, from the right of examination, or from exercising the right of rejection, if the goods did not conform to the contract. (*Pope* v. *Allis, supra; Coplay Iron Co.*v. *Pope,* 108 N. Y. 232.) The duties under the rules of the customs, were paid, and were required to be paid before the plaintiffs took possession, and as a condition of their exercising any control of the property. The event upon which the plaintiffs were bound to pay for the iron was specified in the contract, and that was on the delivery to them of the shipping documents. This might, and in the ordinary course would, precede the actual delivery and receipt of the goods into their custody. There would be nothing necessarily inconsistent in making a payment on presentation of the shipping documents and a subsequent rejection of the iron on examination. It would be analogous to a payment in advance of delivery. The defendants had a right to demand payment on delivery of the shipping documents, although the plaintiffs had had no opportunity to inspect the iron. It appears that after the plaintiffs had examined and rejected the hoops which came by the "Germanic," they desired to defer paying for the hoops which came by the "Arizona" and "Chester" until examination. The correspondence between the parties indicates that at first the defendants were disposed to accede to this view. But on the twenty-third of April, before the plaintiffs had examined the iron, the defendants, insisting that the iron was according to contract, peremptorily demanded payment of the plaintiffs and threatened litigation unless the plaintiffs remitted the amount of the account before noon of the next day, and in pursuance of this demand the plaintiffs made the payment of April twenty-fourth, stating in the letter containing the remittance that "we reserve the right to reject the poor iron when we take in store." The plaintiffs in making this pay-

ment simply complied with their legal obligation under the contract. They had received the shipping documents, although they had as yet made no examination of the iron which was then on the dock. Unless they had already lost the right of examination and rejection by their prior delay, they did not lose it by performing their stipulation in the contract to pay on presentation of the shipping documents. That obligation was not dependent upon acceptance of the goods. The doctrine of voluntary payment is inapplicable to the case. That doctrine proceeds upon the just rule that a person cannot yield to an asserted right and pay a sum of money demanded on account of such right, and afterwards maintain an action to recover it back on the ground that he was not legally bound to do the thing demanded, nor will it aid him that in making the payment he reserves a right to recall it or pays under protest, there being no fraud or deceit. (*Flower* v. *Lance*, 59 N. Y. 604.) The plaintiffs here do not deny, but, on the contrary, admit the right of the defendants to demand the money paid at the time it was paid. They base their action on the ground that not having then accepted the iron, and the right of rejection still existing, and having thereafter rejected it for cause, the consideration upon which they paid the money failed and they are entitled to recover it back. We think the claim is well founded. The answer to the point of voluntary payment may be technical, but the defendants stand in the attitude of urging a strict and technical defense.

The point that the contract was entire and indivisible and that the plaintiffs could not accept the sheets and reject the hoops, is based upon the general rule of law that where a contract is entire, though it may embrace the performance of several things, if one of the parties professes to deny its obligation upon him, or to rescind it on the ground that the other party has failed to perform its obligation on his part, he must renounce or rescind it *in toto*. There was, indeed, one contract in the sense that there was but one instrument embracing both descriptions of iron. But the two kinds of iron were distinct in character, and the prices were different

and specific for each kind.    There is nothing upon the face
of the contract or in the evidence to indicate that the price of
one kind was fixed with reference to the price of the other,
or that the acceptance of both kinds was a consideration for
the undertaking by the defendants to deliver iron of either
kind.    The shipments were severed by the acts of the
parties.    The payments were to be made on the arrival of
each shipment.    The plaintiffs directed that the sheets should
be sent in three shipments and the hoops in three or four.
If only sheets had been included in one shipment, it would
have answered the contract, and so of the hoops.    The acts of
the parties indicate that they regarded the contract as several
in respect to each description of iron.    The plaintiffs paid for
the sheets by the " Germanic," and declined to pay for the
hoops, and the defendants made no claim that having received
the sheets, the plaintiffs could not reject the hoops.    Indeed,
the mere failure of the defendants to send hoops of the
required quality by the " Germanic " was not *ipso facto* a
breach of their contract.    They had a right to supply others
in their place, and if the sheets conformed to the contract the
plaintiffs were bound to pay for them, although the hoops
were defective.    Whether the contract was entire in the sense
claimed depends upon the intention.    We think, under the
circumstances, it was properly held to be divisible, and that
acceptance of sheets did not preclude the plaintiffs from
rejecting hoops.

The construction of the defendants, growing out of the
shipment of sheets by the " Rhubina," was, we think, properly
disposed of by the General Term, and nothing need be added
to the opinion there upon this point.    The point is covered
also by *Filley* v. *Pope* (115 U. S. 215).

The counter-claim, based on the shipment of hoops by the
" Abyssinia," which the plaintiff refused to accept, was
properly overruled on two grounds ; *first*, because the failure
of the defendants to furnish hoops of the required quality in
the former shipments, and insisting that the plaintiffs should
accept them on the contract, justified the plaintiffs in

rescinding the contract as to the balance of the hoops; and, *second*, the defendants, who are seeking to compel the plaintiffs to pay for hoops by the " Abyssinia," have not only failed to show that they were of the quality provided in the contract, but they inserted in the case a statement that they would not insist on the appeal that the iron was equal to that agreed to be delivered.

We think the judgment is right, and it should, therefore, be affirmed.

All concur, except RUGER, Ch. J., not voting.

Judgment affirmed.