called for a simple headache remedy in common use, and if by taking that poison the lining of his stomach was eaten and injured in a way so that it could be said the injuries were likely to be permanent in their character, I do not think the amount of damages awarded by the jury should be tampered with, even though the court might have arrived at a different conclusion upon the same evidence.

There was certainly sufficient evidence to support the finding that defendant was negligent and that plaintiff was free from negligence, and that plaintiff had been injured by taking a poisonous tablet defendant had sold him, and I can see no error in the reception of evidence which would justify the setting aside of this verdict.

Motion for a new trial is therefore denied, and an order may be entered accordingly.

---

MILLARD CONST. CO. v. DEICHES.

(Supreme Court, Appellate Division, First Department. April 12, 1912.)

1. PRINCIPAL AND SURETY (§ 123*)—LIABILITY OF SURETY.

A seller of cranes complete with carriages, who contracted to have a crane in place on or before a designated date, and to furnish the other cranes within specified times thereafter, gave a bond conditioned for performance of the contract, provided the buyer should notify the surety of any default of the seller. The first crane was not erected in time, and on the day following the time fixed the buyer notified the surety that the contract had not been completed, and inclosed a copy of a letter to the seller, calling his attention to the violation of the contract. The surety received no further notice of the seller's failure to deliver the cranes within the time specified. *Held* that the surety received sufficient notice of the seller's failure to deliver the first crane, and it was liable for the damages sustained by the buyer in consequence of the seller's nonperformance of the contract to that extent, though there could be no recovery for damages sustained for the nondelivery of the other cranes within the time specified for want of proper notice to the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. § 123.*]

2. PRINCIPAL AND SURETY (§ 162*)—DIRECTED VERDICT—WHEN AUTHORIZED.

Where a plaintiff in an action on the bond of a seller conditioned on his performance of the contract of sale is entitled to any damages from the surety sustained by reason of a specified breach of contract by the seller, a directed verdict for the surety is erroneous, and the case must be submitted to the jury.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 442–445; Dec. Dig. § 162.*]

3. PRINCIPAL AND SURETY (§ 123*)—LIABILITY OF SURETY.

A seller of cranes complete with carriages, who contracted to supply cranes capable of performing work specified and to repair machinery, gave a surety bond conditioned for performance of the contract, provided the buyer should notify the surety of any failure of the seller to perform the contract. The seller delivered cranes, and the buyer, a few days thereafter, accepted them on the representation that the cranes were sufficient to comply with the contract. Four days later the buyer served notice on the surety that the cranes were defective. Prior to the giving of the notice, the buyer had no knowledge of the facts, but relied on the seller's attempt to make the cranes perform their functions. *Held* that since the buyer was entitled to a reasonable time to ascertain the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cause of the defect, and whether it was anything more than improper adjustments or whether the failure to work was due to some cause which could be remedied by proper adjustments, the notice was not as a matter of law served too late to hold the surety on the bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–311; Dec. Dig. § 123.*]

4. PRINCIPAL AND SURETY (§ 112*)—LIABILITY OF SURETY.

A seller of cranes complete with carriages, who contracted to deliver cranes sufficient to perform specified work, gave a surety bond conditioned for performance of the contract, which provided that the buyer should retain the last payment in reserve due to the seller until the complete performance by him of the contract. The buyer paid to the seller the contract price for cranes when actually adjusted on the assumption that they were in proper condition, and would comply with the contract. Deficiencies developed in the working of the cranes. *Held*, that the surety was not released from liability on his bond by reason of the buyer's payment of the contract price.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 226–234; Dec. Dig. § 112.*]

McLaughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Millard Construction Company against Maurice Deiches, as receiver of the Ætna Indemnity Company. From a judgment entered on a directed verdict for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Max D. Steuer, of New York City, for appellant.
George M. Mackellar, of New York City, for respondent.

INGRAHAM, P. J. Prior to the 24th of September, 1907, the plaintiff had a contract to complete certain railroad construction in the state of New Jersey, and on that day made a contract with the Balanced Cable Crane Company by which the Crane Company agreed to sell, deliver, and erect on certain foundations and tracks located at the site of the works of the plaintiff in and about the construction of the Railroad in Jersey City, state of New Jersey, and the said purchaser agrees to buy the machinery, apparatus, equipment, and supplies specified. The machinery to be purchased by the plaintiff was "six (6) patented balanced cable cranes complete with carriages," and the contract with great particularity specifies the capacity of and work that these cranes were to do. The Crane Company guaranteed that the said machinery specified should be well made of good workmanship and material and capable of doing the work specified, and further agreed to repair the machinery, to furnish a similar part to replace any of the materials which within one year after date is proven to have been defective. It further provided that, if after the installation of the said cable cranes or any of them the purchaser should require the Crane Company to operate all or any of them in actual work, the plaintiff would pay said company $20 per day per crane for each and every day said crane was so operated. It was

further agreed that one of the said cranes complete should be in place in proper running order and condition on or before October 8, 1907; that within one week after the said crane was accepted by the plaintiff, and the installment due therefor paid, that the second of said cranes should be similarly erected and placed in proper running order and condition for operation; and that within one week after such acceptance and payment for each crane thus erected another crane should be similarly erected in place in proper order and condition and ready for operation until all six had been so erected. The price that the plaintiff agreed to pay for such cranes was $31,-629.94, of which $7,765.88 had been paid before the execution of the contract, $15,000 paid in cash upon the signing of the contract, and $8,864.06 in six equal payments, the first to be payable as soon as the first of said cranes was erected and each of the remaining payments payable without interest on a like completion of each of the remaining cranes. It further provided that an acceptance of any of the cranes shall not conclude the plaintiff against any failure of material which shall develop through use of the load carriages and any such fault in material shall be replaced or repaired by the company, nor shall such acceptance preclude the plaintiff in the case of a subsequent failure of a crane or cranes to substantially perform the work intended for it, provided such failure occurs within a reasonable time after acceptance, and without negligence on the part of the plaintiff. It further provided that the Crane Company agreed to furnish to the plaintiff simultaneously with the execution of this agreement a satisfactory surety company's bond for $20,000, conditioned for the faithful performance of all the terms, stipulations, and conditions of this contract on the part of the Crane Company to be performed.

In pursuance of this last clause of the contract, the Crane Company furnished a bond by which it and the defendant acknowledged themselves indebted to the plaintiff in the sum of $20,000. The bond then recited that the principal, the Crane Company, had entered into a written contract with the plaintiff, being the contract before mentioned, for the delivery and erection of six balanced cable cranes complete according to the terms and conditions of the said contract, a copy of which contract was made a part of the bond. The condition of the obligation was that, if the principal should faithfully perform said contract according to the terms, covenants, and conditions thereof except as thereinafter provided, then the obligation should be void, otherwise to remain in full force and effect. It is then provided that "this bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the obligee to recover hereunder." One of the conditions was that the surety should be notified in writing of any act on the part of the principal or its agents or employés which might involve a loss for which the surety is responsible immediately after the occurrence of such act shall come to the knowledge of the said obligee. The bond also provided that the defendant should have the right in its option to assume the contract and sublet or complete the same if the principal should cease operation thereunder, in which event all money pro-

vided by the contract to be paid to the principal should be paid to the surety under the same conditions as by the terms thereof such money would have been paid to the principal had the contract been duly performed by it. That the plaintiff should retain the last payment in reserve due to the principal until the complete performance by the principal of all the terms, covenants, and conditions of the contract, and until the expiration of the time within which liens or notice of liens may be filed, and the surety should be notified in writing before the last payment should be made or said reserve paid.

The complaint alleges that the Crane Company did not perform the said contract, and failed, refused, and neglected to perform the same in certain particulars specified in the complaint: First. That it erected only four of said cranes, and failed to sell, deliver, and erect the other two. Second. That the Crane Company did not cause the first of the machines to be erected on or before October 8, 1907, but that the first crane was not erected until October 24, 1907, the second until November 11, 1907, the third until December 3, 1907, the fourth until December 28, 1907, and the fifth and sixth machines were never delivered or erected. Third. That the cranes have failed in all respects to meet the terms, covenants, and guarantees of the said contract, and the said machines were not well made of good workmanship and material and were not capable of doing the work specified in the said contract; that the plaintiff has duly kept and performed all the obligations to be performed on its part by the terms of the bond, and has duly notified the defendant of the default, and has been damaged to the amount of $20,000, for which it seeks recovery.

The answer, after admitting the making of the bond and of the contract between the Crane Company and the plaintiff, and denying the other material allegations of the complaint, sets up four separate defenses. The first is that the plaintiff at divers times agreed with the Crane Company to modifications in the terms and conditions of the contract without notice to and without the knowledge and consent of the defendant; second, that the plaintiff extended the time within which the Crane Company should perform or partly perform the contract without notice to and without the knowledge and consent of the defendant; third, that the failure of the Crane Company to complete the contract was due wholly and entirely to the wrongful neglect of the plaintiff; and, fourth, that the plaintiff waived performance on the part of the Crane Company to perform the terms of the contract, and by accepting performance after alleged default by permitting the Crane Company to continue in the performance of the contract without notice to and without the knowledge and consent of the defendant. There was no affirmative defense that the plaintiff failed to notify the surety of any act on behalf of the Crane Company which might involve a loss for which the said surety was responsible, although the allegations of the complaint that the plaintiff had duly notified the defendant of the default of the Crane Company is denied upon information and belief. Coupled with that denial, however, is the allegation that, contrary to the terms and conditions of the contract, the plaintiff prevented said Crane Company

from continuing to perform the terms and conditions of the said contract by it to be performed.

Upon the trial at the end of the plaintiff's testimony, the defendant moved to dismiss the complaint. After that motion was made, the defendant rested, and asked the court to direct a verdict in favor of the defendant upon the grounds stated upon the motion to dismiss. The court directed such a verdict for the defendant, and from the judgment entered thereon the plaintiff appeals.

[1] The defendant seeks to sustain this direction upon the ground that the failure of the plaintiff to notify the surety of the act of the principal in failing to erect the third and fourth cranes within the time specified in the contract immediately after the plaintiff had knowledge of such failure released the surety from all liability on the bond. The obligation of the defendant's principal was that one of the said cable cranes complete should be placed in proper running order and condition and ready for operation on or before October 8, 1907, and that within one week after acceptance by the purchaser of said crane and the receipt by the company of the installment payment due upon such completion thereof the second of said cranes should be similarly erected in place in proper order and condition, and ready for operation. By the bond it was agreed that the defendant should be notified in writing of any act on the part of the said principal which may involve a loss for which the said surety is responsible thereunder immediately after the occurrence of such act shall have come to the knowledge of the plaintiff. It appeared as part of the plaintiff's case that the first crane which was to be erected on October 8, 1907, was not erected in time, and on October 9th the plaintiff notified the surety that the contract had not been completed in this particular, and inclosed a copy of a letter of the date of October 7, 1907, to the Crane Company, calling the attention of the Crane Company to this violation of its contract. The defendant, therefore, had express notice of the failure of its principal to complete the contract in time by the failure to deliver a completed crane by the 8th of October, 1907. Clearly upon this notification the defendant would be liable to the plaintiff for the damages that accrued in consequence of the delay in furnishing the first crane.

[2] If plaintiff was entitled to recover any damages from the defendant, the amount of the damage sustained by reason of the nondelivery of the first crane was for the jury. The failure of the plaintiff to notify the defendant of the failure of the Crane Company to deliver the subsequent cranes within the time specified by the contract might prevent the plaintiff recovering damage because of the delay in furnishing the other cranes called for by the contract, but the defendant was expressly notified that its principal had failed to complete the contract by furnishing the first crane within the time specified, which would seem to be a notice that the defendant's principal had failed to comply with its contract as to time, and I am inclined to think that that was a sufficient notification of the failure of the defendant's principal to complete the contract, and the fact that it continued its default by failure to supply the other cranes within the time specified was not a separate act of the defendant's principal of

which the defendant was entitled to notice. But, assuming that it was, the only effect of a failure to give such notice would be to prevent the plaintiff from recovering for the subsequent delays. It could not, as I read this contract and the bond given to secure its performance, relieve the defendant from liability for a failure to furnish the first crane within the time provided for by the contract, of which fact the defendant had notice. From that time until December 28th the defendant's principal delivered four of the six cranes under the contract.

[3] The cranes apparently did not perform the work that the contract required they should, and the defendant's principal was during all that time engaged in attempting to make these cranes work, until, on the 7th of January, the plaintiff served upon the defendant a notice that the cranes did not comply with the contract, and that the defendant's principal had finally abandoned the attempt to make them comply. The contract between the plaintiff and the defendant's principal was made a part of the bond given by the surety as security for its performance. The last of the four cranes were accepted and paid for on January 3, 1908. During all this time the defendant's principal's officers were representing that the cranes were sufficient to comply with the contract, that, as soon as they were actually in operation and the parts adjusted, they would be found in compliance with the contract; and the defendant's principal and the plaintiff were endeavoring to so arrange conditions that the cranes would comply with the provisions of the contract. There was no evidence, as I read this record, to show that prior to the 7th of January, 1908, the plaintiff had knowledge of any fact which would justify it in notifying the defendant that the cranes installed could not be made to comply with the terms of the contract. It is true that these cranes, when first installed, did not do the work the contract provided that they should do, but the plaintiff's representatives were notified that that was only because of the fact that the machinery was not in proper working order, and had not been properly adjusted, and that, as soon as the proper adjustments were made, the machines would work. It cannot be said as a matter of law that the plaintiff had notice of the fact that these cranes were incompetent to do the work prior to January 7th, when the notice was served. At least it was a question for the jury that appeared in the evidence the plaintiff had given such a notification of the breach of the contract by the defendant's principal as was required by the contract. The mere fact that a machine of this kind would not work the first day or the first week that it was installed was not such a fact as would require the plaintiff to at once notify the defendant that the machine did not properly work. It was entitled to a reasonable time to ascertain the cause of the defect, and whether or not it was anything more than an improper adjustment or the failure to work was due to some cause which could be remedied by proper repairs or adjustments of the machinery.

[4] Nor do I think it can be said that the fact that the plaintiff paid to the defendant's principal the contract price for these cranes when they were finally adjusted was a violation of any obligation of the plaintiff which discharged the surety. The payments were evi-

dently made in good faith on the assumption that the cranes were in proper condition, and would comply with the contract. The deficiencies that appeared were developed in the working of the cranes themselves, and, if the plaintiff in good faith supposed that the cranes were sufficient to comply with the contract and paid for them based upon such assumption caused by the assurance of the defendant's principal, that certainly was not itself such a violation of the contract as discharged the surety. A failure to comply with the terms of the contract as to payment for the cranes when erected and in working order might discharge the surety as a violation by the plaintiff of one of its covenants in the contract. I think the evidence discloses that the plaintiff performed its contract and did everything that was required of it, that there was at least a question for the jury as to whether the plaintiff did not notify the defendant of all acts which came to its knowledge which might involve a loss for which the surety was responsible, and that the direction of a verdict for the defendant was error.

The judgment and order appealed from should, therefore, be reversed, and a new trial ordered, with costs to appellant to abide event.

LAUGHLIN and MILLER, JJ., concur.

McLAUGHLIN, J. (dissenting). On September 24, 1907, the plaintiff entered into a contract with the Balanced Cable Crane Company, by which the latter agreed, for the consideration of $31,629.94, to sell, deliver, and erect for it six excavating cranes. Twenty-two thousand, seven hundred and sixty-five dollars and eighty-eight cents of the consideration was paid at or prior to the time the contract was executed, and the balance agreed to be paid in six equal installments, one when each crane was "erected in place in proper running order and condition and ready for operation." By the contract the first crane was to be ready for operation on or before the 8th of October, 1907, when it was to be accepted and paid for, and the second, one week later, and so on until the six had been delivered. Simultaneously with the execution of the contract the Balanced Cable Crane Company, as principal, and the Ætna Indemnity Company (now in the hands of a receiver) as surety, gave to the plaintiff a bond conditioned for the payment of $20,000, but upon the condition that the same should be void if the Balanced Cable Crane Company faithfully performed its contract. The bond provided:

"This bond is executed by the surety upon the following express conditions, which shall be conditions precedent to the right of the obligee to recover hereunder. The said surety shall be notified in writing of any act on the part of said principal or its agents or employés which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said obligee or to any representative duly authorized by him to oversee the performance of said contract; and a registered letter mailed to the president of said surety at its office in New York City, N. Y., shall be the notice required within the meaning of this bond."

It also provided that, if the principal abandoned the contract or for good reason was compelled by the plaintiff to discontinue its per-

formance, then the surety might, at its election, complete the contract, and in that case it should be entitled to receive such payments as would otherwise be owing to the principal.

This action is brought upon the bond; the plaintiff alleging it has sustained damage to the extent of $20,000 by reason of the failure of the Balanced Cable Crane Company to perform its contract, for which a judgment is demanded. The answer put in issue the material allegations upon which a recovery is predicated except the making of the contract and the issuance of the bond, and alleged, affirmatively, that the plaintiff consented to the modifications of the contract, without notice to the Indemnity Company, and without its knowledge or consent; that it waived performance of the contract by extending the time, and accepting performance after default had occurred, without notice, and by reason thereof the Indemnity Company was relieved from liability. At the trial, after both parties had rested, the court directed a verdict in favor of the defendant. Judgment was accordingly entered dismissing the complaint, from which, and an order denying a motion for a new trial, plaintiff appeals.

The cranes to be delivered under the contract were guaranteed to lift at least 5 tons at the rate of 60 feet per minute, and then carry such weight along a cable to the place where the same was to be dumped at the rate of 600 feet per minute. The fact is not disputed that the Balanced Cable Crane Company broke its contract in several respects. It failed to furnish two of the cranes and those which it did furnish were not within the time specified, nor would they do the work stipulated to be done, and were so defective that they were finally discarded. Notwithstanding such failures, it is insisted the judgment is right because (1) the plaintiff did not comply with the condition of the bond by giving immediate notice of the failure to furnish the cranes and of their defects at the time and in the manner called for by the contract; and (2) the plaintiffs paid the full contract price for the four cranes which were delivered.

The first crane, as already seen, was to be erected and ready for operation on or before October 8, 1907, but, in fact, was not delivered until October 26th. Notice, however, of the failure to deliver this crane at the time specified in the contract was given to the Indemnity Company on October 9th. The second crane was not delivered until November 19th; the third December 18th; the fourth December 26th; and the fifth and sixth were never delivered at all. No notice whatever of the failure to deliver the cranes, other than the first one, was given to the Indemnity Company until January 7th. On that day notice was given that two of the machines had not been delivered, that the other four did not comply with the requirements of the contract, nor were they delivered at the time and in the manner called for, and, by reason of such failures, damages would be claimed. This notice did not comply with the condition of the bond. That, it will be remembered, expressly provided that the Indemnity Company should not be liable, unless it was immediately notified in writing of a breach of the contract. Had the contract been complied with, the last machine would have been delivered on November

12th, and yet no notice was given until 56 days after the last machine should have been delivered and more than 60 days as to the others, except the first. The failure to give this notice I think released the surety. Had immediate notice been given, the Surety Company could have exercised its right to complete the contract or taken such measures as it saw fit to reduce the damages sought to be recovered in this action by reason of the delay. In any event, it was entitled to immediate notice because its liability on the bond expressly so provided. The appellant, however, contends that whether the notice were given within the time mentioned in the bond was for the jury. Undoubtedly, where the facts are in dispute, or where different inferences may be drawn from undisputed facts, as to whether or not a notice were immediately given would be for the jury; but here there is no dispute as to the facts, and different inferences cannot be drawn from them. Therefore, whether the notice were given within the time provided for in the bond became a question of law. Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; McManus v. Western Assurance Co., 43 App. Div. 550, 48 N. Y. Supp. 820, 60 N. Y. Supp. 1143, affirmed 167 N. Y. 602, 60 N. E. 1115; National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623; Streeter v. Streeter, 45 Ill. 155.

National Surety Co. v. Long, supra, is directly in point. There the agreed time for the completion of a building was the 1st of September. The contractor had then failed and was unable to perform his agreement in the time and manner specified, and the plaintiff knew it. He had agreed in such a case to immediately notify the Surety Company of these facts, but he failed to give the notice until September 12th; and the court said:

"This failure was a clear breach of his covenants. 'Immediately' means without the intervention of other events; forthwith; directly. A notice 11 days after the known failure of a contractor to complete the performance of his agreement is not an immediate notice thereof, and it is not a compliance with the covenant and condition embodied in this contract. * * * It is said that the question whether or not this notice given 11 days after the known failure of the contractor was immediate notice was a question for the jury, and was properly submitted for their consideration. * * * There may be cases where the question of the sufficiency of a notice in time and manner of service should be submitted to the consideration of the jury. Cases where the evidence is contradictory—where facts and circumstances are established which render doubtful the question whether or not there has been a fair compliance with the provisions of the contract in this regard—may authorize this course of procedure, but there is nothing of this character in the case at hand."

See, also, United States Fidelity & Guaranty Co. v. Rice, 148 Fed. 206, 78 C. C. A. 164.

Irrespective of the time of delivery of the four cranes, they did not comply with the contract in many respects. Not one of them had a lifting power of more than 2,500 pounds, although the contract called for 5 tons. They were defective in many other respects, and to such an extent they finally had to be discarded as useless. Damage is claimed upon this ground, and yet no notice whatever was given of these defects until January 7th, and the fact is undisputed that the plaintiff had knowledge of them as soon as the machines were deliv-

ered. The failure to give notice of the defects until the 7th of January precludes the plaintiff from maintaining this action.

I am also of the opinion that full payment by the plaintiff of the four machines which were delivered estops it from claiming, as against the Indemnity Company, that they were not delivered in time, or did not correspond to the terms of the contract. The contract provided final payment was to be made upon each machine when it was "in place, in proper running order and condition, and ready for operation." Not one of them was ever ready for operation or complied with the contract, and yet the plaintiff accepted and paid for them as delivered. Had notice been given to the Indemnity Company and the payment withheld, then under the terms of the bond, if it had elected to carry out the contract, it would have been entitled to such payments; in other words, the plaintiff by making these payments, which it was not obligated to do, changed the position of the Indemnity Company to its injury, and thereby it was relieved from liability under its bond. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669.

The judgment and order appealed from, therefore, should be affirmed with costs.

DOWLING, J., concurs. \