Rivers Bros. v. Putney, 27 N. M. 177.

[No. 2512.   June 20, 1921.]

## RIVERS BROS. CO. v. PUTNEY.

### SYLLABUS BY THE COURT.

In the absence of contrary contractual provisions, where goods are ordered of a specific quality, the seller undertaking to deliver them to a carrier to be forwarded to the buyer at a distant point, the right of inspection at destination continues for a reasonable time, and in such cases the carrier is not the agent of the buyer for inspection purposes, but only for the receipt and carriage of the goods.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by the Rivers Bros. Company against R. E. Putney, trading under the name and style of L. B. Putney. From a judgment of dismissal, plaintiff appeals. Affirmed.

Heacock & Grigsby, of Albuquerque, for appellant.
Reid, Hervey & Iden, of Roswell, for appellee.

## OPINION OF THE COURT.

PARKER, J. This is an appeal by Rivers Bros. Company, a corporation, from a judgment rendered in favor of R. E. Putney, trading as L. B. Putney, appellee, dismissing the complaint.

The action was to recover a sum of money on account of the sale and delivery of certain fruit. The facts disclose that the appellee is a wholesale grocer at Albuquerque, and that the appellant is a fruit dealer in Los Angeles, having a broker at Albuquerque. The broker telephoned the appellee asking if he wanted anything on that day's refrigerator dispatch from the appellant from Los Angeles. In response thereto appellee ordered certain fresh fruit. The appellant delivered to the carrier at Los Angeles certain fruit purporting to be in accordance with the appellee's order. The shipment included crates of apricots, apples, and bing cherries, and arrived in a refrigerator car at Albuquerque in slightly shorter than the usual time. No claim was made that the shipment was not properly handled but it was shown by appellee, but denied by appellant, that the apricots were delivered to the carrier in Los Angeles in an overripe and rotten and unsalable condition. On account of the condition of the apricots, the shipment was refused by the appellee on its arrival in Albuquerque, after an inspection thereof by him.

The appellant contends, in effect, that the contract was executed for a shipment f. o. b. Los Angeles, and consequently title passed upon delivery there to the carrier, and that the appellee had no right to inspect the shipment at Albuquerque, its agent, the carrier, having received the shipment at Los Angeles, or any right to refuse to accept the shipment upon its arrival at destination.

The court found that the contract called for fruit fit and in condition to ship to Albuquerque; that the appellee had the right to inspect the shipment at Albuquerque; and that the carrier was appellee's agent only in so far as the actual transportation of the goods was concerned.

Appellant's broker testified that he had done business for a number of years with the appellee and that it was always understood that goods purchased from the appellant were sold f. o. b. Los Angeles. On cross-examination the witness testified that what he meant by f. o. b. Los Angeles was that the purchaser should pay the freight from Los Angeles, and that his understanding of his agency was that the carrier was the agent of the purchaser in so far as acceptance of the goods to the standard and quality of those ordered were concerned. He also testified on cross-examination.

"Q. Let us make the illustration not quite so plain; let us suppose that Mr. Putney ordered apricots, which I believe he did in this order. You understand that that order was meant to be apricots to be shipped by refrigerator freight, and to be merchantable when arriving in Albuquerque, you understand that? A. Yes, sir."

From other testimony of the witness, however, it would appear that all his brokerage business theretofore had been done upon the theory that the buyer took the goods at his own risk, through the agency of the carrier, at point of departure. The trial court, however, found, in substance, that the contract contemplated the delivery at Los Angeles of merchantable fruit, and that the apricots were not of merchantable quality; hence the appellant breached its contract, and the appellee was not required to accept the shipment at destination. It also found, in effect, that the carrier was the agent of the appellee only for the purpose of transportation of the goods, and could not bind the appellee with respect to the quality of the goods ordered and shipped.

The contract, in express terms, was silent as to quality of fruit ordered, but it is evident that the parties contemplated that the sale and purchase was of merchantable fruit—not overripe, decayed, unsalable fruit. It is immaterial whether this be characterized as an express or implied warranty; the fact remains that the contract was for merchantable goods, and that the court was justified, under the doctrine of substantial evidence, to conclude that the apricots, when delivered to the carrier in Los Angeles, did not fulfill the conditions of quality contemplated by the contract made between the parties.

We then have for consideration only this question: Where goods of a fixed quality are ordered from a foreign seller, to be transported through a carrier, f. o. b. the seller's residence, does the acceptance of the shipment by the carrier waive the right of the purchaser to inspect the goods at destination for quality? The appellant's statement of the proposition for which it contends injects facts which make the doctrine inapplicable here. It states the proposition as follows:

"Where the contract between the purchaser and the seller is that goods purchased are to be delivered to a common carrier, and the carrier is to act as the agent of the buyer in the shipment and delivery of the goods to him, and the delivery is completed by the seller f. o. b. to the carrier, and where under the contract the carrier is the agent of the purchaser in accepting the goods as to the standard and quality, then the purchaser has no right to refuse the acceptance of the goods purchased, at the point of destination, on account of the inferior quality of the goods purchased or because the goods failed to come up to the standard and quality."

Cases of this character depend for solution upon the terms of the contracts made between the parties. Where the shipment is agreed to be made f. o. b. place of departure, title to pass there and right of inspection as to quality, etc., to be made there, of course the purchaser cannot refuse acceptance at

point of destination. But we have no such case here. Here the court found, in effect from the facts, constituting the contract, that, while the delivery was f. o. b. Los Angeles, it was not complete until tne state of the shipment at Los Angeles had been ascertained at Albuquerque, because the contract contemplated fruit delivered in Los Angeles to the carrier in fit and salable condition to ship to Albuquerque. In other words the contract fixed a standard of quality. In Eaton v. Blackburn, 52 Or. 300, 96 Pac. 870, 97 Pac. 539, 20 L. R. A. (N. S.) 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, the court said:

"Under an executory contract for the future sale and delivery of goods of a specific quality, the quality is a part of the description, and the seller is bound to furnish goods actually complying with such description. If he tenders articles of inferior quality, the vendee is not bound to accept them; and, unless he does so, he is not liable therefor. This necessarily gives to the vendee the right, and imposes upon him the duty of inspection, and he must therefore be given an opportunity to make such inspection before becoming liable for the purchase price, unless the contract otherwise provides; and where articles are to be delivered to a common carrier by the vendor, to be forwarded to the vendee at a distant point, and no provision is made for inspection and acceptance before or at the time of shipment, the vendee is entitled, under the law, to a reasonable time, after the goods arrive at their destination, in which to exercise the right of inspection, and to accept or reject them, if they do not comply with the contract."

In 23 R. C. L. p. 1426, it is said:

"The implied agency of the carrier designated by the buyer to accept delivery by him only extends to an acceptance of such goods as comply with the requirements of the contract of sale. The carrier has no authority to pass upon whether the goods in fact comply with the contract, and if they do not so comply the seller cannot base a claim of constructive delivery to the buyer on his delivery to the carrier. Ordinarily the buyer, after the arrival of the goods at their destination, has the right to inspect the same to see if they comply with the contract, and may reject them if they do not do so, and this is held true though the contract provides for delivery to carrier f. o. b. point of shipment, without a requirement

that the goods be inspected and accepted, by the buyer at such point."

In the same work and volume, page 1433, it is said:

"It is the general rule that where goods are ordered of a s specific quality, which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination; in such a case the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them."

Numerous cases will be found supporting the text. Some of them, cited by appellee, are: Schiller v. Blyth & Fargo Co., 15 Wyo. 304, 88 Pac. 648, 8 L. R. A. (N. S.) 1167; Alden v. Hart, 161 Mass. 576, 37 N. E. 742; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Salomon v. King, 63 N. J. Law 39, 42 Atl. 745. In the last-cited case the court, among other things, said:

"With respect to common carriers, the inspection of goods for the purpose of ascertaining whether they conform to a particular contract is ordinarily so foreign to their business that the employment of an express company by a vendee, nothing more appearing, will not constitute it the vendee's agent to accept goods sold and delivered."

In Pierson v. Crooks, supra, the court said:

"The ordering of goods of a specific quality by a distant purchaser of a manufacturer or dealer, with directions to ship them by carrier, is one of the most frequent commercial transactions. It would be a most embarrassing and inconvenient rule, more injurious even to the dealer or manufacturer than to the purchaser, if delivery to the carrier was held to preclude the party giving the order from rejecting the goods on arrival, if found not to be of the quality ordered."

For further authorities, see Strauss v. National Parlor Furniture Co., 76 Miss. 343, 24 South. 703; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12

Am. St. Rep. 831; Holt v. Pie, 120 Pa. 425, 14 Atl. 389; Fogel v. Brubaker, 122 Pa. 7, 15 Atl. 692.

The contract being silent as to inspection, but the court below finding that it contemplated the shipment at Los Angeles of goods of a certain quality, the rule announced herein is controlling. For the reasons stated, the judgment of the trial court will be affirmed; and it is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.