IDA B. CRAIN, Administratrix of the Estate of FRANK CRAIN, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.—73 S. W. (2d) 786.

Division Two, July 9, 1934.

*Watts & Gentry* for appellant; *Edward C. Craig* and *Vernon W. Foster* of counsel.

*Eagleton, Henwood & Waechter* for respondent.

TIPTON, J.—This case comes to the writer on reassignment. It is an action for damages under the Federal Employers' Liability Act, arising out of the death of respondent's husband, Frank Crain, while employed by appellant as a locomotive engineer. The trial resulted in a judgment for respondent in the sum of $27,500 and the appellant has duly appealed to this court.

The respondent alleged in her petition that she had been duly appointed administratrix of the estate of her husband; that on January 11, 1929, while he was operating an engine attached to a passenger train of the appellant, he was killed in a wreck resulting from the derailment of the engine at Belleville, Illinois, and she further alleged: ''That said derailment and injuries to and death of her said husband directly and proximately resulted from defendant's violation of the laws of the United States, known as the Boiler Inspection Act (U. S. Code, Title 45) and the rules and regulations of the Interstate Commerce Commission, passed pursuant thereto, in this, that the aforesaid engine was not safe to operate in the service in which the same was then used, in that the wheels and their parts and appurtenances on said engine were worn and defective, and the flanges thereof were worn and had vertical surfaces; that defendant failed to inspect the aforesaid engine and appurtenances thereof from time to time, as required by the provisions of the above-mentioned act.''

The section of the act alleged to have been violated (Sec. 23, Title 45, U. S. C. A.—a part of the Safety Appliance Act) reads as follows:

''It shall be unlawful for any carrier to use or permit to be used on its line any locomotive, unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of Sections 28, 29, 30, and 32, and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.''

One of the rules of the Interstate Commerce Commission (made pursuant to the above-quoted section of the Safety Appliance Act) condemns the use of an engine wheel with a ''flange worn to 15/16 of an inch or less in thickness, gauged at a point 3/8 of an inch above

the tread, or having a flat vertical surface one inch or more from the tread."

Appellant's answer is a general denial.

It was admitted that Frank Crain and the appellant were engaged in interstate commerce at the time of the derailment resulting in his death, and the rule of the Interstate Commerce Commission alleged to have been violated was adopted by the commission pursuant to Section 23, Title 45, U. S. C. A.

The train which was derailed was the appellant's regular southbound passenger train, number 203, consisting of engine number 1159 and nine cars. It left Union Station in St. Louis, Missouri, shortly after ten o'clock the night of the accident, with Frank Crain as the engineer. While rounding the south part of a reverse curve on the regular southbound track at Belleville, Illinois, the engine was derailed, and when it stopped it was turned over on its left side, on the east side of the track, south of the point of derailment. The first three cars of the train left the rails, broke off of their trucks and turned partly over on the west side of the track. The point of derailment was about 250 feet north of the passenger depot where the train was scheduled to stop. The north part of the reverse curve was a curve of 8 degrees; the south part was a curve of 12 degrees, and the east rail thereof was two inches higher than the west rail.

The appellant's only assignment of error is that the trial court erred in overruling its demurrer to the evidence.

The appellant contends that as this case is brought under the Federal Employers' Liability Act (45 U. S. C. A., Sections 51-59), and in violation of the Boiler Inspection Act (U. S. Code, Title 45), that the rights to the parties to this litigation must be governed by the decision of the Supreme Court of the United States, and when such decisions conflict with rules laid down by Missouri courts the latter must be disregarded. The appellant is correct in its contention, and respondent, in her brief, agrees with the appellant.

The appellant contends that under the Federal rule in determining whether or not a demurrer to the evidence should be sustained, although there is some evidence which tends to substantiate the plaintiff's case, yet, if that evidence is so unsubstantial that the court could not, or should not, allow a verdict in plaintiff's favor to stand if one should be rendered, then the trial court should sustain the demurrer to the evidence. Pennsylvania Railroad Co. v. Chamberlain, 53 Sup. Ct. 391; Southern Ry. Co. v. Walters, 52 Sup. Ct. 58; Gunning v. Cooley, 50 Sup. Ct. 231, are cases cited by appellant which sustain its contention, and the rule is not disputed by the respondent, but respondent contends that there is substantial evidence to sustain the verdict of the jury. The weight and credibility of the evidence

under the Federal practice and under our rule is a question for the jury and not for the court.

In the recent case of Poe v. Illinois Central Railroad Company, 335 Mo. 507, 73 S. W. (2d) 779, we said:

"Its weight and credibility and the question of fact thus presented were clearly questions for the jury under our state practice, and such we understand to be the rule also in the Federal courts where a question of fact on conflicting but positive and direct testimony is presented."

The first question presented is, did the respondent produce substantial evidence tending to show that the appellant violated the Safety Appliance Act in using or permitting the use of an engine with a defective wheel?

William Ebbs testified on behalf of the respondent as follows: that he had been employed by the appellant for many years as an engine inspector; that he was familiar with the requirements of the Safety Appliance Act with reference to engine wheels; that he was employed by the appellant as a machinist's helper at the time of the wreck; that he went to the scene of the wreck with Nick Grubernick, another employee of the appellant; that he assisted in the work of stripping the engine of some parts of its running gears the morning after it was derailed; and that while so engaged he had in his possession a standard wheel gauge, a devise used in gauging the thickness of flanges of engine wheels and the vertical surface thereof. He also testified on this occasion he gauged the flanges of one of the pony wheels of the derailed engine and found by actual gauge the flange was worn down to fifteen-sixteenths of an inch in thickness gauged at a point three-eighths of an inch above the tread over a space of six or eight inches and that it had a flat vertical surface one inch or more from the tread.

This is direct and positive testimony that one of the pony wheels of the engine was used in violation of the rule above-quoted of the Interstate Commerce Commission. If this testimony is true, then the appellant was negligent in using this wheel. "Under this section, as said in Baltimore & O. Railroad Co. v. Groeger, 266 U. S. 521, 527, 45 Sup. Ct. 169, 172, 69 L. Ed. 419, the carrier's duty 'to have the boiler in a safe condition to operate so that it could be used without unnecessary peril to its employees was absolute and continuing. No notice to the defendant, actual or constructive, of the defects or unsafe condition of the boiler was necessary to plaintiff's case. Defendant is liable if its breach of duty contributed to cause the death.' " [Robison v. Chicago & E. I. Ry. Co., 334 Mo. 81, 64 S. W. (2d) 660, l. c. 661.]

The fact that the appellant produced several witnesses who contradicted witness Ebbs, including two inspectors from the Interstate

Commerce Commission, would not prevent Ebbs' testimony from being substantial. Witnesses produced by the appellant testified that they had used a "gauge test" and that the wheels of the engine had been inspected lately, and even as late as the date of the derailment. This would be only a conflict of testimony of that produced by the respondent. The mere fact that the witness Ebbs had been discharged by the appellant would be a circumstance which reasonable men might differ as to whether he was telling the truth. These facts go to the weight of his testimony rather than to its substantiality.

"It, of course, is true, generally, that where there is a direct conflict of testimony upon a matter of fact, the question must be left to the jury to determine, without regard to the number of witnesses upon either side." [Pennsylvania Railroad Co. v. Chamberlain, supra.] To the same effect is the case of Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950.

His testimony was a question for the jury. We hold there was substantial evidence that the appellant was using a defective wheel on the derailed engine.

The appellant contends that even though it was negligent in using a defective pony wheel on this engine, yet its demurrer should have been sustained because this negligence was not the proximate cause of Crain's death. That is, that respondent failed to prove that the appellant's "negligence was a direct cause of the injury which resulted in Crain's death."

Ebbs testified that he had spent twenty-five years in dealing with engines and wrecks of engines; that he had made a study of such things and read literature "as to what would happen and does happen if you have a vertical flange" on an engine wheel; that an engine wheel with a vertical flange "would have a tendency to climb the rail at a curve;" that such a wheel bears against the rail harder than any other wheel, and its tendency to climb the rail is thereby increased; and that by bearing against the rail so hard and so tight, it would naturally jump up over the rail.

Raymond Crain testified that he found marks of the engine leaving the track about 50 feet of the point where the engine was lying; that there was a slight indentation on the outside ties, on the outside of the left hand rail; that he was familiar with marks left by pony trucks; that he could tell that the marks were marks of pony trucks; that he could tell from indentations he found on the ties that the marks were made by a flange of a pony truck wheel, because a front pony truck carries no weight but its own; that he could tell by the marks on the outside ties that the engine was still in an upright position; that if it had been on its side, there would not have been any marks on the ties; that he "used to be a railroad man, out in the

ferences to be drawn from such facts are so strongly against plaintiff as to leave no room for reasonable minds to differ." (Citing cases.)

In the recent case of Parrent v. Mobile & O. Railroad Co., 334 Mo. 1202, 70 S. W. (2d) 1068, l. c. 1073, we said:

"The evidence was conflicting, as our statement shows, but there was evidence sufficient to support a verdict for either party, and, if the jury believed plaintiff's testimony, they would be warranted in finding in his favor despite the evidence to the contrary. 'Upon elementary principles that is enough to withstand a motion for a directed verdict.' [O'Boyle v. Northwestern Fire & Marine Ins. Co. (C. C. A.), 49 Fed. (2d) 713, 716.] We do not understand appellant to contend that, if in fact plaintiff was injured under the circumstances and in the manner as stated by him in his testimony, defendant would nevertheless not be liable in damages to plaintiff on account thereof. The writer may not have grasped the full import and effect of appellant's argument, but it seems to go largely to the weight of the evidence, the conflict therein, and the greater credibility of appellant's witnesses. These, however, were matters for the consideration of the jury, and doubtless were presented to the jury by appellant's counsel in the trial of the case. 'Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury.' [Gunning v. Cooley, 281 U. S. 90, 50 Sup. Ct. 231, 233, 74 L. Ed. 720.] The demurrer to the evidence does not involve the weight of the evidence, and in determining a motion by defendant for a peremptory instruction 'the court must resolve all conflicts in the evidence against the defendant' (Chesapeake & Ohio Railroad Co. v. Martin, 283 U. S. 209, 51 Sup. Ct. 453, 455, 75 L. Ed. 983), and 'the court should never withdraw a question from the jury, unless "all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue." (Cases cited.) . . . The court must take the view most favorable' to the plaintiff and ' "if there is a conflict of the evidence or inferences a verdict should not be directed." ' [Atchison, T. & S. F. Ry. Co. v. Condos (C. C. A.), 30 Fed. (2d) 669, 670.] Where there is uncertainty arising 'from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury.' [Gunning v. Cooley, supra.] The credibility of the witnesses, the interpretation of testimony, and 'the weight of evidence and the extent and effect of contradiction' present questions for the jury." (Citing cases.)

With these principles in mind, we believe from the facts and circumstances in evidence that it would be reasonable for the jury to infer that the derailment on this curve was caused by the defective pony wheel on the engine. Under the above stated facts, the verdict

yards in the clerical department;'' and that when so employed he "used to be with an inspector at all times.''

The appellant contends that the sole cause of the derailment was the excessive speed of the train. Evidence on behalf of the appellant tended to show that at the time of the derailment the train was going 35 to 45 miles per hour; that if a train went over the reverse curve in question over 30 miles per hour it would have a tendency to cause a derailment. The appellant's evidence tended to show that the engineer had been given an order before he left St. Louis that he should reduce the speed of the train to ten miles per hour, at this place. In rebuttal the respondent produced two witnesses that the train at the time of the derailment was going 15 to 18 miles per hour. The conductor of the train testified that he gave the slow order mentioned to the engineer and also that he knew of no failure to comply with any orders. He said he could not tell how fast the train was running at the time of the derailment.

We believe the respondent produced substantial testimony tending to show that the defective pony wheel of the engine was the proximate cause or contributing cause of the derailment. If the appellant's negligence contributed to the derailment, then that showing is sufficient to sustain a verdict for the respondent.

In the case of Young v. Wheelock, supra, we said:

"Defendants further contend that the evidence was wholly insufficient to show that either the track was defective or that the train was being operated at an excessive speed. We think the facts above set out testified to by plaintiff's witnesses were substantial evidence of these charges. It was, likewise, for the jury to determine what weight they would give this testimony as against the contrary testimony of more witnesses on the part of the defendants. In determining these facts they could also, of course, take into consideration any facts favorable to plaintiff developed in the testimony of defendants' witnesses. Defendants also contend that even though there was some evidence of defects in the track and high speed, yet the evidence is wholly insufficient to show that these or either of them were the proximate cause of the derailment. We must consider this contention, as well as all others above made, in light of the fundamental and settled rules that a defendant's demurrer to the plaintiff's evidence admits as true every fact and circumstance which plaintiff's evidence tends to prove; that plaintiff is entitled to the benefit of every inference of fact which may reasonably be drawn therefrom; that the evidence must be considered in the light most favorable to the plaintiff; that the defendant's evidence must be disregarded except in so far as it may tend to aid plaintiff's case; and that such a demurrer can be sustained only when the facts in evidence and the legitimate in-

of the jury was based on substantial evidence and was not the result of speculation and conjecture as to what caused the derailment.

We believe the trial court properly overruled the appellant's demurrer to the evidence, and was justified in submitting the case to the jury.

The judgment of the trial court is, therefore, affirmed. All concur.