## TERMINAL R. ASS'N OF ST. LOUIS v. SCHORB.

### No. 13081.

Circuit Court of Appeals, Eighth Circuit.

Oct. 19, 1945.

Rehearing Denied Nov. 7, 1945.

Writ of Certiorari Denied Jan. 7, 1946.

See 66 S.Ct. 470.

Arnot L. Sheppard, of St. Louis, Mo., for appellant.

William H. DeParcq, of Minneapolis, Minn. (Robert J. McDonald and Donald T. Barbeau, both of Minneapolis, Minn., and Harvey B. Cox, of St. Louis, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action brought under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. The principal contentions on appeal are that the District Court erred in refusing defendant's requests for a directed verdict, and that the evidence fails to sustain the judgment for plaintiff. The further contentions made are, that in order to recover plaintiff is required to rely on an operating custom of the defendant; that such custom was not established for plaintiff's benefit, was neither pleaded, proved nor shown to have been relied on, and that in any event, violation of the alleged custom was not the proximate cause of plaintiff's injuries.

The plaintiff was a switch foreman for defendant and had worked in the switch yard where the accident occurred for more than twenty years. The tracks at the location of the accident extended in a general north and south direction.

On September 11, 1943, at about 10:18 a.m., the plaintiff, after completing a switching operation, walked toward the yardmaster's office to receive further instructions. On the way to the office he met the yardmaster who instructed plaintiff to take a train out of that particular yard and to obtain bills of lading for that train from the yard clerk at the office.

Plaintiff then started to walk northeast toward the office. In order to reach his destination it was necessary to cross several intervening tracks. One of these tracks was track No. 18, on which a single Bur-

lington car was standing. This car was located between two frogs in such a manner that it blocked two tracks in addition to track 18, and was on a slight curve. When plaintiff approached the Burlington car he looked south toward the lead track and observed some other cars but did not know whether they were moving or stationary. He proceeded north to a point 10 or 12 feet north of the Burlington car. He again looked south but the Burlington car blocked his view and he failed to see three approaching cars which had been kicked or shunted in by means of a flying switch and were approaching the Burlington car from the south. Plaintiff then turned east and started across the track.

When plaintiff reached a point midway between the rails of track 18, the yardmaster, who observed the approaching cars, called to plaintiff, "Oh, Al!" and plaintiff started to turn south. At that instant there was a severe crash as the shunted cars struck the Burlington car with great force. The drawbar of the Burlington car struck plaintiff's chest and he was knocked onto his back. A car and a half passed over him before he could grasp the under-rigging, and after he did so he was dragged a considerable distance. Plaintiff sustained serious injuries for which the jury awarded him $35,000 damages. Defendant does not contend that the damages are excessive, but limits its contention to the right of plaintiff to recover any amount.

Track No. 18, on which the accident occurred, was a receiving, as distinguished from a classification, track, although on occasions it was used for classification purposes. The evidence discloses that receiving tracks are those on which trains from various directions enter the yard to be reclassified within the yard. Classification tracks are those on which cars are switched for the purpose of realigning them and making them up into trains. Generally, cars and trains were taken to receiving tracks, including track No. 18, under engine control and were not kicked or shunted in, as is the common practice in the case of classification tracks.

The Burlington car contained merchandise weighing 9,369 pounds. One of the three shunted cars carried 82,400 pounds. The second was loaded with 78,100 pounds and the third was empty.

A safety rule or suggestion of the defendant provided: "To guard against sudden movement of cars, do not cross a track in yard behind the rear end of standing cars without walking a sufficient distance beyond the end of such cars to protect against movement from other end."

Plaintiff's evidence tended to show that on occasions when cars were kicked into track No. 18, the usual and customary speed for the movement was from 3½ to 6 miles per hour, and that they would not be kicked into track No. 18 at as great a speed as was usual in the case of regular classification tracks. A witness for plaintiff testified that the cars involved herein were moving about 12–15 miles per hour when they left the engine, and that the track had some gravity, so that they were moving at about the same speed when they struck the Burlington car. Plaintiff testified that during his 22 years of experience he had never seen a car hit as hard as this one was hit, at that location. Other witnesses declined to state a specific speed, but from their testimony it might fairly be inferred that the speed was much faster than 6 miles per hour.

Plaintiff's evidence established that immediately following the impact the Burlington car was derailed and rolled 115 to 120 feet thereafter.

The yardmaster, who was a witness for defendant, testified that the derailment occurred after the impact and after the Burlington car had rolled 15 or 16 feet, but this witness admitted, at least by implication, that the car leaped into the air at the time of the impact. He admitted that 3 to 3½ miles per hour was the proper speed for shunting cars on this occasion, having in mind protection to lading, rolling stock and roadbed, but declined to estimate the speed at which the cars actually were travelling except to answer the query whether they were going 12 to 15 miles per hour by saying, "No. In my judgment they were not moving at such a high rate of speed." He admitted that in a pre-trial deposition he had stated that the cars were shunted at a speed of not more than 3½ to 5 miles per hour. This witness further testified that many theories might be advanced concerning the cause of the derailment, but the record is barren of evidence as to what actually caused it if it was not the result of the impact.

The defendant contends that it owed plaintiff no duty to kick the cars at any particular rate of speed, and points to testimony of its employees that the sole test determinative of excessive or dangerous

speed of cars when kicked or shunted was whether the shunted cars would damage other cars, their lading, or railroad equipment and roadbed. The defendant, however, had the duty, imposed or preserved by the Federal Employers' Liability Act, to answer to plaintiff for negligence of defendant's employees. This duty existed regardless of the reason its employees might assign for limiting speed of cars involved in a switching operation. Whatever may have been the reason for the custom of limiting speed of cars when making a flying switch, defendant could not with immunity kick the cars at any rate of speed desired in disregard of life and limb of its employees. If the speed of the shunted cars was so excessive as to constitute negligence, and the excessive speed was the proximate cause of the injury, plaintiff is entitled to recover. The test of defendant's negligence was not custom or usage, but what reasonable prudence would require under the circumstances. Dunagan v. Appalachian Power Co., 4 Cir., 33 F.2d 876, 68 A.L.R. 1393.

This conclusion is not contrary to the decision in Chesapeake & Ohio R. Co. v. Mihas, 280 U.S. 102, 50 S.Ct. 42, 74 L.Ed. 207. In that case the evidence disclosed that the flying switch was made at 4 or 5 miles per hour which "was not an unusual speed for that kind of an operation." See 280 U.S. at page 105, 50 S.Ct. at page 43, 74 L.Ed. 207. In the Mihas case, the employee, for his own convenience, climbed over standing cars instead of walking around them, and there was no evidence that any railroad employee had knowledge that the injured employee ever crossed by climbing over standing cars. Under these circumstances the Supreme Court decided that the employee could not base recovery on failure to follow an alleged custom of the switching crews to warn persons engaged in unloading cars, other than employees, when shunting was to be done.

■■ In concluding that this defense is without merit, we are not unmindful that the plaintiff was an experienced switchman engaged in a hazardous occupation and of necessity required to work at a hazardous place. That fact, however, did not absolve defendant from any duty toward plaintiff.

■ We come now to the question of admissibility of evidence of a custom not to kick cars into Track No. 18 at a speed in excess of from 3½ to 6 miles per hour, which custom was not pleaded by plaintiff. As we view the record, plaintiff charged the defendant with negligence in that it made a flying switch at "a high, dangerous, and excessive rate of speed." In connection with that charge, plaintiff offered, and the court admitted, evidence of the alleged custom and defendant adduced evidence tending to show that limiting speed of shunted cars was for the purpose of protecting property, not for the purpose of protecting railroad personnel. We believe that evidence of the custom was admissible without being specifically pleaded. The custom was offered on the issue of negligence, but the plaintiff could make a submissible case by showing that the speed at which the cars were shunted in this instance was so grossly excessive as to constitute negligence, without proving the custom.

■ The general rule is that where a custom is merely incidental and is relied on only as evidence of some other fact in issue, it need not be pleaded. 25 C.J.S., Customs and Usages, § 32, p. 125, and cases cited under note 11.

■ Where a custom is merely evidentiary of defendant's negligence and is not substantive, it is not required to be pleaded. Hogan v. Fleming, 317 Mo. 524, 297 S.W. 404.

In Chicago Great Western Ry. Co. v. Minneapolis, St. Paul & S. S. M. R. Co., 8 Cir., 176 F. 237, 20 Ann.Cas. 1200, this court held that in the case of a doubtful act, evidence of the ordinary practice and usual custom of ordinarily prudent persons under similar circumstances is admissible on the issue of negligence in the performance or omission of the act. The court, 176 F. at page 242, said: "The presumption was, as has already been said, that these operators were of ordinary intelligence and prudence. The best test of reasonable care in a given case is evidence of the degree of care which such persons commonly exercise under similar circumstances where such evidence is available. Hence, upon the question of negligence or none, evidence of the ordinary practice and of the uniform custom, if any, of such persons in the performance under similar circumstances of acts like those which are alleged to have been done negligently, is generally competent evidence, because it presents to the jury a correct standard for the determination of the issue."

Beard v. Marine Lighterage Corp., D.C.N.Y., 296 F. 146; Phœnix Iron & Steel Co. v. Wilkoff Co., 6 Cir., 253 F. 165, 1 A.L.R. 1497; Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 138 S.W. 36, and H. W. Eddy, Ins., Inc., v. National Union Fire Ins. Co., Mo.App., 94 S.W.2d 1062, relied on by defendant, are cases wherein a custom was relied on as constituting a part of a contractual obligation and are not authority for the proposition advanced by defendant in this case. The distinction is stated by the Kentucky Supreme Court in White's Administrator v. Kentucky Public Elevator Co., 186 Ky. 91, 216 S.W. 837, 840, in these words: "The rule requiring a custom to be pleaded before it may be shown in evidence applies where there is an effort to incorporate into a contract a local custom as a binding stipulation between the parties, * * * but has no application where the purpose is, as here, to prove the ordinary and usual way commonly employed to do a certain thing in order to determine whether or not it has been negligently done."

The defendant contends that the District Court erred in failing to submit to the jury the question whether the custom involved herein was for the benefit of the plaintiff, and whether it was certain, uniform and of long standing. However, defendant took no exception to the charge on this ground, as required by Federal Rules of Civil Procedure, rule 51, 28 U..S.C.A. following section 723c. Hence the alleged error is not reviewable. Krug v. Mutual Benefit Health & Accident Ass'n, 8 Cir., 120 F.2d 296; Mill Owners Mut. Fire Ins. Co. v. Kelly, 8 Cir., 141 F.2d 763.

Failure to take exception was not cured by defendant's exception to the court's refusal to charge that there was no evidence that the cars were shunted at an excessive or dangerous rate of speed because there was no evidence that the rate of speed at which they moved was negligent. The giving of such an instruction would have been tantamount to direction of a verdict for defendant. Defendant made no request for an instruction regarding the alleged custom.

However, it was not necessary to submit the question whether the custom was established for the benefit of defendant's employees, for it was admitted solely for the evidentiary value it might have in proving excessive speed, and not as the basis of recovery. This was the theory on which the case was tried and submitted to the jury.

Timmerman v. St. Louis Architectural Iron Co., 318 Mo. 421, 1 S.W.2d 791, was an action by a structural iron worker for injuries sustained when a beam on which he was working fell. The Missouri Supreme Court held that the failure of plaintiff's instruction to submit the question of existence of a custom to brace beams was not error since existence of the custom was merely evidentiary of defendant's negligence and was not a substantive part of plaintiff's cause of action. In the present case the custom might be considered by the jury, even though its main purpose may have been to protect property and not lives.

Defendant's contention that plaintiff failed to prove reliance on the alleged custom requires but little additional discussion. While the evidence was sufficient to authorize the jury to conclude that defendant's switchmen, including plaintiff, in determining clearance to be allowed when crossing a track behind a standing car, did rely on the fact that speed of shunted cars would be limited, reliance on the custom was not a necessary element of plaintiff's case.

Defendant's contentions that it was entitled to a directed verdict and that the evidence is insufficient to sustain the verdict, are likewise overruled. One of the main purposes of the Federal Employer's Liability Act was to modify the common law barriers against recovery by an employee in a suit against his employer predicated on an industrial accident. Tiller, Executor, v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967. The right to jury trial constitutes a part of the remedy afforded by the act and employees must not be deprived of that right in close or doubtful cases. Bailey, Administratrix, v. Central Vermont Ry., Inc., 319 U.S. 350, loc. cit. 354, 63 S.Ct. 1062, 87 L.Ed. 1444. It was for the jury, as the fact finding body, to weigh the evidence and judge credibility. Tennant, Administratrix, v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Crain v. Illinois Central R. Co., 335 Mo. 658, 73 S.W.2d 786, certiorari denied 293 U.S. 607, 55 S.Ct. 123, 79 L.Ed. 698. On this appeal we must view the evidence and inferences reasonably to be drawn therefrom, in the

light most favorable to plaintiff. Chicago, St. P., M. & O. R. Co. v. Muldowney, 8 Cir., 130 F.2d 971, certiorari denied 317 U.S. 700, 63 S.Ct. 526, 87 L.Ed. 560.

Bearing these principles in mind, we conclude that there was evidence from which the jury might reasonably conclude not only that the cars involved in this accident were shunted against the Burlington car at a speed so excessive as to constitute negligence, but also that such negligence was the proximate cause of the injury. We are unable to say as a matter of law that plaintiff would have been injured even though the speed of the shunted cars had not been excessive. That was for the jury to determine.

The court's instructions were fair and adequate and the jury found the issues in favor of plaintiff. The verdict finds support in the evidence and we would invade the province of the jury if we were to set it aside.

Affirmed.